UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAIN RESTAURANT CO.,

           Plaintiff,

v.

CARROLS CORPORATION,

           Defendant.
_____/

CIVIL ACTION NO. 04-74239

DISTRICT JUDGE DENISE PAGE HOOD

MAGISTRATE JUDGE DONALD A. SCHEER

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION**:

      I recommend that Carrols Corporation's Motion to Dismiss for Lack of Ripeness or, in the Alternative, Stay be denied.

**II.**   **REPORT**:

      **A.**    **Procedural History**

      Plaintiff filed its Complaint for declaratory relief in the Circuit Court of Kalamazoo County, Michigan. The case transferred to the Circuit Court for the County of Jackson, Michigan, and then was removed to this Court on October 29, 2004. Defendant filed its Answer and Affirmative Defenses, together with a counterclaim, on November 5, 2004. Plaintiff's reply to the counterclaim was filed November 29, 2004. The district judge entered a Scheduling Order on January 10, 2005.

      On April 6, 2005, defendant filed a Motion to Dismiss for Lack of Ripeness or, in the Alternative, Stay. That motion was referred to the undersigned magistrate judge for a Report and Recommendation on April 19, 2005. Plaintiff filed its Response to the motion on April 26, 2005. The parties appeared, by counsel, for hearing on June 8, 2005.

### B.    Applicable Law and Standard of Review

A motion to dismiss an action under Federal Rule of Civil Procedure 12(b)(1) is an assertion that the federal district court lacks subject matter jurisdiction over the action before it.  Fed.R.Civ.P. 12(h)(3) provides that the court's lack of subject matter jurisdiction may be asserted at any time by any interested party.  The district court must weigh the merits of what is presented on a Rule 12(b)(1) motion to dismiss, and decide the question of subject matter jurisdiction.  "If, however, a decision of the jurisdictional issue requires a ruling on the underlying substantive merits of the case, a decision should await a determination of the merits either by the district court on summary judgment motion or by the fact finder at the trial."  Wright and Miller, Federal Practice and Procedure: Civil 3rd Section 1350.

### C.    Factual Background

This case presents a dispute between the parties over the terms of a written lease containing an option to purchase.  The lease agreement at issue pertains to only one restaurant property, located in Jackson, Michigan.  For purposes of clarity, however, a more general factual history is helpful.

In 1992, plaintiff Cain Restaurant Company owned ten Burger King Restaurants. On September 21, 1992, plaintiff entered into a purchase and sale agreement with defendant Carrols Corporation.  (Exhibit 2 to Plaintiff's Response to Carrols' Motion to Dismiss).  Under the agreement, plaintiff sold to the defendant substantially all of the personal property associated with the operation of the ten restaurants.  The agreement provided that defendant would lease from plaintiff "certain buildings, other real property and

land upon and in which the restaurants are located (collectively, the 'premises')."  The contract also provided for a uniform form of lease for nine of the ten restaurants.[1]  One of the nine restaurant locations leased to defendant under the uniform terms is Store Number 4188, located in Jackson, Michigan.  The lease contract for that store is the subject matter of this case.  (See, Exhibit 3 to Plaintiff's Response to Defendant's Motion to Dismiss).

The lease for Store Number 4188 granted defendant tenant rights in "premises" (particularly described by a meets and bounds description) "together with all buildings, structures and other improvements whether now existing or hereafter erected thereon . . .."  Paragraph 26 of the lease granted defendant the option to "purchase the premises." It further provided that the purchase price would be the fair market value of the premises as of the date on which defendant delivered to plaintiff notice of its intent to exercise the option.  The contract provided that the fair market value would be determined by an appraiser based on a comparison with sales of similar or comparable properties.

On September 20, 2004, defendant issued to plaintiff a written notice by certified mail of its intent to exercise the option on the Jackson, Michigan store.  The notice expressed defendant's view that "the fair market value is not defined to include the building or those items identified in paragraph 26(f)," which dealt with fixtures and articles of personal property appertainment to the real estate.  Plaintiff maintains that the contract between the parties dictates that the option price include the fair market value of the buildings and improvements as well as the land at the restaurant site.  Plaintiff's Complaint in this action asserts that "[t]he differing interpretations by Cain and Carrols of the meaning

---

[1]  With respect to the 10th store, defendant assumed a lease between plaintiff and Burger King Corporation.

3

of the term 'premises' in connection with Carrols' exercise of the option under the lease presents an actual controversy which can only be determined by an adjudication in the nature of a declaratory judgment, as provided by law." Plaintiff "seeks a declaration by this Court that the term 'premises' means, in connection with the exercise by Carrols of the option under the lease, the land and all buildings, structures and improvements (whether now existing or hereafter erected) thereon and all easements, rights of way, licenses and appurtenances thereto and that the purchase price for the premises must similarly consider the land and all buildings, structures and improvements . . . thereon and all easements, rights of way, licenses and appurtenances thereto." (Complaint, paragraph 16).

Defendant's Answer denies that plaintiff is entitled to a declaration as to the meaning of the term "premises," and prays that the Complaint be dismissed. The Answer further denies that the differing interpretations of the parties as to the meaning of the term "premises" presents an actual controversy. The later position is also the basis of Carrols Corporation Motion to Dismiss for Lack of Ripeness or, in the Alternative, Stay.

### D.   Analysis

The brief in support of Defendant's Motion to Dismiss argues that the Complaint "is premised on a misconstruction of a term in a commercial lease's purchase option." Defendant further argues that plaintiff "prematurely filed this dispute" and refused to implement the appraisal procedures called for in this purchase option language of the lease. Carrols maintains that Cain's dispute is not ripe for adjudication and, thus, should be dismissed. (Defendant's Motion to Dismiss, paragraph IV). In the alternative, defendant argues that this case should be stayed "until the parties have proceeded through

the appraisal process or until "an actual controversy arises regarding the valuation of the Jackson property." (Defendant's Motion, Section V).

The Declaratory Judgment Act ("DCA"), 28 U.S.C. §§2201-2202, provides in pertinent part that:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The Act does not confer jurisdiction. Rather, it simply provides the federal courts with the authority to grant declaratory relief in appropriate circumstances. Louisville & Nashvill R.R. Co. v. Donovan, 713 F.2d 1243, 1245 (6th Cir. 1983). The statute does, however, restrict the grant of such relief to "a case of actual controversy" within the court's jurisdiction. That formulation closely resembles the jurisdictional requirement in Article III, Section 2 of the Constitution, which allows federal courts to act only in "cases" or "controversies." "As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests.'" Orix Credit Alliance, Inc. v. Wolfe, 212 F.3d 891, 897 (5th Cir. 2000) (citing Middle South Energy, Inc. v. City of New Orleans, 800 F.2d 488, 490 (5th Cir. 1986)). There is little doubt that both the Constitutional and statutory requirements for federal court action are met in this instance. Plaintiff and Defendant are lessor/seller and lessee/buyer, respectively, under a written lease containing an option to purchase certain commercial real estate in Jackson, Michigan. The defendant has tendered notice of its intent to exercise the purchase option, and the contract requires an appraisal to determine the purchase price.

5

The parties differ as to the nature and extent of the property interests to be appraised. Plaintiff maintains that the contract requires the appraisal of the land together with all improvements and appurtenant interests, while the defendant contends that only the land must be evaluated, without consideration of the value of the improvements. Defendant has removed the case to this court under the diversity jurisdiction provisions of 28 U.S.C. 1332, asserting diversity of citizenship and representing that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Neither party has argued that the statutory requirements of §1332 are not satisfied.  There is no cause to believe that the parties' business relationship is other than arm's length, or that the filing of this action was collusive or pretextuous.  Thus, federal jurisdiction exists in this case, and the sole issue for determination is whether the court should decline to exercise it.

Although the DCA confers authority for a grant of declaratory relief, it does not require the court to exercise that authority. Brillhart v. Excess Ins. Co. of America, 62 S.Ct.1173, 1175 (1942).

> Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

Wilton v. Seven Falls Co., 115 S.Ct. 2137, 2143 (1995).  Considerations which have influenced courts in the decision to grant or deny declaratory relief include the likely effect of such action in finally resolving the parties' dispute; the availability of other forms of relief; the pendency of other proceedings on the contested issues; the burden which the

6

requested relief may impose; and whether the declaratory judgment action is being employed for tactical purposes. See Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d Sec 2759. In exercising its discretion to decline declaratory relief, a trial court should state its reasoning on the record for purposes of appellate review.

A federal court sitting in diversity applies the substantive law of the state in which it sits. See Klaxon Co. v. Stentor Electric Mfg. Co., 61 S.Ct. 1020 (1941). In this case, the parties have also agreed in the lease contract that it should be governed and construed in accordance with the laws of the State of Michigan. (Lease, Sec. 34, p.24).

Defendant Carrols Corporation urges this court to decline, or at least delay, a grant of declaratory relief.   Its motion is founded on the theory that the dispute between the parties is not "ripe" for judicial determination, and that "(plaintiff) Cain ... asserts that a dispute exists where none yet does." Defendant's Brief, Section IV, p.4.  Carrols urges the court to employ a three part analysis set out in United Steelworkers of Am., Local 2116 v. Cyclops, 860 F.2d 189 (6th Cir. 1988).  In that case, the court evaluated the ripeness of the dispute by a consideration of: 1) the likelihood that the harm alleged by plaintiff would ever come to pass; 2) whether the factual record was sufficiently developed to produce a fair and complete hearing of the competing claims; and 3) the benefits of waiting versus the hardship that refusing to consider plaintiff's claims would impose. 860 F.2d at 194-95.

### 1. Likelihood that the harm alleged by plaintiff would come to pass

Defendant argues that there is no evidence to indicate that the harm alleged in plaintiff's complaint will ever occur. The argument is based on three propositions: a) that an appraiser might be able to fulfill the professional responsibility of comparing the "Jackson Property" to other properties and determine a value; b) that it is "entirely possible"

7

that the appraiser would assign the same value to the land regardless of whether the buildings are considered in the appraisal process; and c) that it is "entirely possible" that the parties will agree with the valuation assigned by the appraiser regardless of the criteria used in calculating it. On those bases, the defendant contends that plaintiff's claim should be dismissed because "it necessarily depends upon future, contingent events that may never occur." Defendant's Brief, Sec. IV A, p.5.

While acknowledging the common wisdom that "anything is possible," I conclude that nothing in the propositions advanced by Carrols should deter this court from the exercise of its declarative authority. While property evaluation is within the expertise of a real estate appraiser, a prerequisite to the application of that expertise in this case is a determination of what property interests (real estate, improvements, easements etc.) are to be considered in the evaluation. It is apparent from Carrols' notice of intent to exercise the purchase option, as well as from the Complaint, Answer and Notice of Removal in this action, that the parties have an actual and substantial controversy as to the requirements of their contract with respect to the nature and extent of the property interest to be appraised. Under Michigan law, issues of contract interpretation present questions of law reserved to the courts. Petovello v. Murray, 139 Mich. App. 639, 642 (1983). Such issues include whether the particular contract terms are ambiguous and, where the language is clear and unambiguous, the meaning of that language. Nilac Internat. Marketing Gp. v. Ameritech Services, Inc., 362 F.3d 354, 358 (6th Cir.2004). The meaning of ambiguous language is a question of fact, Id., to be determined through the application of established principles of construction. See Prestige Cas. Co. v. Michigan Mut. Ins. Co., 99 F.3d 1340, 1350 (6th Cir. 1996). The court must determine the intent of the parties, Michigan Millers  Mut. Ins. Co.

8

v. Bronson Plating Co., 197 Mich. App. 482, 494-95 (1992), aff'd, 445 Mich. 558 (1994), and is particularly well suited to do so. Certainly, defendant has provided no authority in support of the view that contract interpretation is the proper province of a real estate appraiser.

I find implausible Carrols' assertion that the appraiser might assign the same value to the land in issue whether or not the buildings and improvements are considered in the evaluation process. Once again, a review of the letter exercising the option, the pleadings and the removal request makes it plain that the parties have opposing views on the meaning of the appraisal provisions of their contract, and that the controversy is grounded in conflicting expectations as to the correct selling price for the property. Defendant represented in its Notice of Removal that the amount in controversy is at least the $75,000.00 required to invoke this court's diversity jurisdiction, and probably more than that. It should also be noted that there is disagreement even as to the selection of the appraiser(s) who should perform the evaluation.  I see little prospect that this court's abstention from the exercise of its declarative authority would be constructive in resolving the parties' differences as to the correct method for deciding the purchase price to be paid under the contract. On the contrary, I would suggest that a definitive judicial interpretation of the lease provisions relating to the purchase option would do much to advance to completion of the parties' business.

I am equally skeptical of Carrols' argument that it is "entirely possible" that the parties will agree upon the valuation assigned by an appraiser regardless of the criteria used in determining it. The property interests in issue constitute an operating restaurant business in Jackson, Michigan, which the parties variously value between $300,000.00

9

(Carrols) and $1.3 Million (Cain).  In exercising its option rights, defendant was careful to articulate its position that only the real property, exclusive of improvements, should be considered by the appraiser in determining the option price. Plaintiff promptly asserted its contrary position, and filed suit in state court to seek a judicial resolution.   Carrols represented in the Removal Notice that the dispute over the value of the building alone amounted to more that $500,000.00. It is difficult to conclude that the parties will agree on a purchase price without regard to whether an improvement of that value is taken into consideration. The impasse resulting from their conflicting contract interpretations has resulted in the breakdown of the appraisal process itself. While the metaphysical possibility of agreement on the option price may exist, the conduct of the parties to this point, and common business sense,  render the prospect remote in my view. Such dim prospects militate in favor of declarative relief to clear interpretive barriers to the resolution of the conflict

### 2. Whether the factual record is sufficiently developed to support a fair and complete hearing of the competing claims

Defendant advances the same factual assertions in support of its argument that the record is insufficiently developed to permit declaratory relief at this time. Carrols observes that, "[w]hen there are steps or events that must occur before the court's opinion is relevant, the court's decision is hypothetical and [the issue] should be considered unripe." Defendant's Brief, p.5-6 (citing Allstate Ins. v. Wayne County, 760 F.2d 689, 696 (6th Cir. 1985)). While I accept the legal argument as stated,  I find no basis on which to conclude that future actions of an appraiser, or the parties in this case, are necessary to enable this court to interpret the terms of a written contract executed in October, 1992.  Defendant

10

cites <u>Orix Credit Alliance v. Wolfe</u>, 212 F.3d 891, 895 (5th Cir. 2000), which held that "a case is generally ripe if any remaining questions are purely legal ones." That is precisely the situation in this case. The parties have a controversy concerning the proper construction of contract language adopted by them more than twelve years ago. All relevant evidence relating to the contract they signed, and their respective intents in doing so has already come into existence, and future conduct is irrelevant to a proper construction of their agreement. Interpretation of a contract, whether it is ambiguous or unambiguous, is a matter of law for the court. <u>Steinmetz Elec. Cont. v. Local Union No. 58</u>, 517 F. Supp. 428, 432 (E. D. Mich. 1981).

**3. <u>Whether the benefits of waiting outweigh any hardship to the plaintiff</u>**

The final consideration urged by Carrols in seeking dismissal of this case is that the benefits of adjudication at a later time outweigh any hardship the plaintiff may endure by the delay. Defendant maintains that there is no harm in waiting until after the appraisal process is complete, as  it has been over twelve years since the Lease was signed, and two years since Carrols' right to exercise the option matured. It is also argued that Carrols could have waited five or ten more years to exercise its option, although the relevance of that fact is not readily apparent, as the notice was actually tendered in September 2004. The essence of the argument is that Cain will suffer no harm or change of position if the court dismisses the Complaint or delays acting on it.

Plaintiff responds that actual hardship will attend the dismissal or delay of this action. Cain maintains that the appraisal process called for in the lease is not advisory, but binding upon the parties in the sale of the property to defendant. The establishment of a sale price based upon consideration of fewer property interests than the lease requires will

11

necessarily and negatively affect plaintiff's interests under the contract. The appraisal mechanism is stalled, and the likelihood of agreement on the correct valuation method is minimal.   Plaintiff further advises that the contract in suit is only one of nine identical agreements existing between the parties, so that the employment of incorrect appraisal criteria will affect their rights beyond the single property in issue in this case. Cain contends that it is beyond the expertise of a real estate appraiser to select among differing legal interpretations of the contract provisions.   Plaintiff observes that the parties have invested significant time and expense in the prosecution of this case to date.   Discovery ended on May 10, 2005, and plaintiff represents that it intends to file a Motion for Summary Judgment in the near future.

## Conclusion

I am satisfied that this matter is ripe for adjudication, and that the granting of declarative relief will promote the resolution of the parties' dispute. A final judicial determination as to the meaning of the contract language will provide the basis for an accurate and binding appraisal in this case,  as well as a model for the exercise of identical option provisions regarding eight other parcels of business real estate. To be sure, there may be other points of conflict to be resolved prior to a final conclusion of the parties' business, but none has been identified which is so disruptive of the parties contractual relationship as the impasse over the appraisal process contemplated in the purchase option.  A district court may render a declaratory judgment even though that judgment will not settle all issues between the parties. The controversy resolved by the declarative relief need only be an autonomous dispute. Harris v. U.s. Fidelity & Guar. Co., 569 F.2d 850, 852 (5th Cir. 1978)(citing Aetna Life Insurance Co. v. Haworth, 57 S.Ct. 461 (1937)). No other,

more promising mechanism for resolving this dispute has been suggested.  As stated above, the prospect for a satisfactory outcome in the absence of court action in this case is poor. Continuing with this litigation provides both parties with the choice of resolving their differences by settlement or being bound by the court's decision. Either way, their dispute will be ended.  For all of the above reasons, I recommend that Carrols Corporation's Motion to Dismiss for Lack of Ripeness or, in the Alternative, Stay be denied.  **III.  <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981), <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>Howard v. Secretary of HHS</u>, 932 F.2d 505 (6th Cir. 1991).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Smith v. Detroit Federation of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987), <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The

response shall address specifically, and in the same order raised, each issue contained

within the objections.


                                          s/Donald A. Scheer
                                          DONALD A. SCHEER
                                          UNITED STATES MAGISTRATE JUDGE

DATED: June 22, 2005


_____

### CERTIFICATE OF SERVICE

    I hereby certify on June 22, 2005 that I electronically filed the foregoing paper with
the Clerk of the Court sending notification of such filing to all counsel registered
electronically.  I hereby certify that a copy of this paper was mailed to the following non-
registered ECF participants on June 22, 2005.  **None.**

                                          s/Michael E. Lang
                                          Deputy Clerk to
                                          Magistrate Judge Donald A. Scheer
                                          (313) 234-5217

14