UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAIN RESTAURANT CO.,

    Plaintiff,                        CIVIL ACTION NO. 04-CV-74239
  v.                              DISTRICT JUDGE DENISE PAGE HOOD
                                   MAGISTRATE JUDGE DONALD A. SCHEER

CARROLS CORPORATION,

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

I recommend that Plaintiff's Motion for Summary Judgment be DENIED, and Defendant's Motion for Summary Judgment also be DENIED.

**II.    REPORT**

    **A.    Procedural History**

Plaintiff, Cain Restaurant Co. ("Cain") filed its original complaint in the Circuit Court of the County of Kalamazoo, Michigan seeking a judicial determination that the purchase option in its Lease Agreement with Carrols Corporation ("Carrols") defines the fair market value of the leased premises as the total value of the land, buildings, and improvements, based upon actual sales of comparable properties. The action was transferred to the Circuit Court for the County of Jackson, Michigan by an order dated October 26, 2004. Defendant then removed the case to this Court on October 29, 2004. Carrols filed its answer on November 5, 2004, arguing that "premises" is defined in the Lease Agreement to include only the land, and that the comparable sales approach should be used to appraise the purchase price based upon the sale of comparable unimproved land only.

Cain filed a motion for summary judgment on June 10, 2005. Carrols filed its response to Cain's motion along with a motion for summary judgment on July 13, 2005. Cain responded to Carrols' motion for summary judgment on August 3, 2005. Oral Arguments were heard on September 14, 2005.

### B. Applicable Laws and Standard of Review

To prevail on a Motion for Summary Judgment, the moving party must meet the initial burden of showing an absence of any genuine issue of material fact as to an essential element of the non-moving party's case. Celotex v. Catrett, 477 U.S. 313 (1986); Street v. J.C. Bradford and Company, 886 F.2d 1472, 1479 (6th Cir. 1989). The burden then shifts to the non-moving party to demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. Celotex, 477 U.S. at 324-25. The non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact. Street, 886 F.2d at 1479. "The non-moving party must come forward with specific facts showing there is a genuine issue for trial." Matsushita Elec. Indus. Company v. Zenith Radio, 475 U.S. 586, 587 (1986).

In determining whether a genuine issue of material fact has been raised, the Court must construe all inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257-58 (1986). The inferences drawn must be justifiable or reasonable. Anderson, 477 U.S. at 255. But, [n]ot every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a summary judgment motion. Street, 886 F.2dd at 1477. Rather, the Court may weigh competing inferences for their persuasiveness. The non-moving party "must do more than show that there is some metaphysical doubt as to the material fact." "Where the record taken as a whole could not

**2**

lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 586-87.

    **C.**    **Factual Background**

On September 21, 1992, the parties entered into a contract whereby Carrols agreed to purchase from Cain the personal property used in the operation of 10 Burger King Restaurants. The contract also provided that Cain would own the real estate for nine of the ten restaurants and Carrols would operate them under a lease with an option to purchase. Nine identical lease agreements were executed. The leases provided Cain a right to grant a first mortgage on the nine restaurants and required Carrols to subordinate the leases to the mortgage. Each lease agreement contains identical language defining how the fair market value and purchase price of the "Premises" is to be established in the event Carrols exercises its purchase option. (Exhibit 5 to Plaintiffs Motion for Summary Judgment).

Seven different drafts of the common lease agreement were exchanged by the parties in negotiating the final language. (Exhibits 7 - 12 to Plaintiffs Motion for Summary Judgment). The first draft, presented by Carrols on August 11, 1992, defined the fair market value of the premises as the replacement cost of the building and the fair market value of the land as vacant and unimproved. (Exhibit 6 to Plaintiffs Motion for Summary Judgment). Cain rejected the draft and sent a revised version to Carrols on August 26, 1992. That draft provided that either the Market or Income Approach to Value would be used to establish the market value of the premises. (Exhibit 7 to Plaintiffs Motion for Summary Judgment). Carrols rejected that proposal and provided a third draft to Cain on September 1, 1992, which provided that an appraiser would define the fair market value of the premises based upon the sales of similar or comparable properties minus leasehold

3

improvements performed by Carrols in the 5 years preceding the exercise of the purchase option. (Exhibit 8 to Plaintiffs Motion for Summary Judgment). On September 3, 1992, Cain presented a Fourth draft proposing that the appraiser determine fair market value of the premises by comparison to similar or comparable sold properties. That language remained unchanged through the remaining three drafts. (Exhibit 9 to Plaintiffs Motion for Summary Judgment). The parties executed the lease in suit (Store #4188) on October 2, 1992. ( Plaintiff's Exhibit 5).

During the Fall of 1992, Cain submitted a financing application to GE Capital for mortgages on the nine restaurant properties. Carrols subsequently sent Cain a Notice of Intent to exercise the purchase option on all nine parcels and offered $3.45 million as the "Fair Market Value of the Premises, as compared with sales of similar or comparable properties in the area." (Exhibit 13 to Plaintiffs Motion for Summary Judgment). Cain countered that the fair market value of the properties was $12.5 million, based upon an appraisal of $7.6 million ten years earlier. GE Capital suspended Cain's refinancing application as a result of the dispute. In February 2003, Cain filed a Complaint in Kalamazoo County Circuit Court seeking a declaration on the issue of valuation under the purchase option in the lease. The case was removed to the U.S. District Court for the Western District of Michigan, but the parties stipulated to dismissing the lawsuit after Cain secured refinancing through National City Bank.

On September 20, 2004, Carrols sent Cain a notice of its intent to exercise the purchase option on one of the leased restaurant properties, Store Number 4188, located in Jackson, Michigan. Carrols' letter declared that the appraiser should determine the fair market value of the "Premises" as the value of the land only and that the building's value

should not be included. (Exhibit 14 to Plaintiffs Motion for Summary Judgment). Cain rejected that position and refused to proceed with the process of determining a sale price.[1] Cain filed this action in the Kalamazoo County Circuit Court to obtain a judicial declaration that the term "Premises" in connection with Carrols' exercise of the purchase option includes the land and all buildings, structures, and improvements, and that the purchase price must reflect the value of all of those interests. The case was transferred to the Jackson County Circuit Court on October 26, 2004. Carrols removed the case to this Court on October 29, 2004.

### D.   Analysis

The lease contract states that it is the final written agreement of the parties. The parties agree that the language was jointly developed through negotiations. Neither party argues that the purchase option is invalid or that Carrols has not exercised its option to purchase the Jackson, Michigan, Burger King in accordance with the lease agreement. Both parties agree that the terms of the lease agreement provide for the fair market value of the Premises to be determined by appraisal using the comparable sales approach. However, the parties disagree as to whether the appraiser should determine the market value of the Premises based upon an assessment of the value of the land alone or the land with the building and improvements.

The second paragraph of the lease agreement defines "Premises" as the property described in "Schedule A," which is a metes and bounds description of land with no

---

[1] The Lease contract provides that the parties will choose a mutually acceptable appraiser to determine the fair market value of the premises. In the event the parties fail to agree on an appraiser, each may appoint an appraiser of its own choosing. The appraisers chosen by the two parties shall appoint a third appraiser to determine the Fair Market Value of the Premises. (Exhibit 5 to Plaintiffs Motion for Summary Judgment).

5

mention of a building or other improvements. The same paragraph separately defines the term "Building" to include "buildings, structures, and other improvements." The leasehold interest conveyed is stated as the Premises "together with" the Building and all easements and appurtenances thereto. (Exhibit 5 to Plaintiffs Motion for Summary Judgment).

The purchase option in the Lease Agreement provides that the lessee agrees to pay the "Fair Market Value of the <u>Premises</u> as of the date lessee delivers to Lessor the Option Notice." (Emphasis added). An appraisal would determine the fair market value of the Premises by means of comparison with sales of similar or comparable properties." (Exhibit 5 to Plaintiffs Motion for Summary Judgment). Carrols' argument is that the lease defines the term "Premises" as the land only, so the fair market value to be determined under the purchase option should not include the value of the building. Carrols maintains that the "Building" is an independent property interest that was intentionally left out of the Purchase Option in recognition of the fact that Carrols would be expending substantial sums in remodeling and maintaining the building and fixtures during the term of the lease. In view of those expenditures, Carrols argues that including the value of the Building as part of the premises under the option forces Carrols to pay for the building twice. Carrols maintains that the original three proposed drafts of the lease are evidence of its intent to not pay for the Building and improvements twice. Carrols' first draft defined the fair market value of the premises as the Building's replacement cost and the land as vacant and unimproved. Carrols rejected Cain's proposed second draft of the lease agreement which provided for the fair market value to be determined using either the Market or Income Approach. Carrols then proposed the third draft which used the comparable sales approach, but allowed a credit for Carrols' leasehold improvements.

Carrols' credit for leasehold improvements was removed from the final fourth draft of the lease which provides that the appraiser determine the fair market value of the Premises by comparison to similar or comparable sold properties. Carrols insists that it only agreed with the removal of the credit from the determination of the "Premises'" value in the fourth draft because "Premises" was already defined as unimproved land in the lease. There is no direct evidence against Carrols argument that their intent was to not pay for the Building twice. Carrols asserts that the contract is unambiguous because the second paragraph of the lease agreement separately defines "Premises" as the property described in "Schedule A" and "Building" as "buildings, structures, and other improvements." (Exhibit 5 to Plaintiffs Motion for Summary Judgment). Carrols' semantic and economic arguments underlying its contention that the terms "Premises" and "Building" were intended to denote separate interests are at least minimally plausible. The application of the "land only" definition in all sections of the lease, however, results in some illogical provisions, as pointed out below, and in Cains' Brief in Support of its Motion for Summary Judgment, pp. 9-15.

Cain agrees with Carrols contention that the contract is unambiguous, but argues that, although the second paragraph of the contract defines "Premises" and "Building" separately, there is nothing to suggest that the terms are mutually exclusive and that the Lease as a whole commonly includes the building and improvements as part of the "Premises." Cain insists that both parties intended the term "Premises" to include the land, buildings, and improvements. Cain further contends that using the terms "Premises" and "Building" as defined in the preamble results in much of the remainder of the lease agreement making no sense at all. Cain contends that allowing Carrols to purchase the

7

Premises for the fair market value of the unimproved land is inconsistent with the intent of the parties and the rest of the Lease Agreement outside of the second paragraph. They argue that both parties understood that "Premises" included the building and that allowing the appraiser to ignore that property interest when determining the fair market (purchase) value enables Carrols to get the building for free. Cain insists that the parties agreed, and that the procedure normally employed in the comparable sales appraisal method requires, that the value of the Premises under the option must be fixed by reference to comparable sales of similar fast food restaurants and not simply to sales of similar unimproved parcels of real property. That argument, however, necessarily requires that the separate and specific definitions set out in the second paragraph of the lease be ignored. Cain offers no satisfactory explanation for the fact that the lease contract defines "Premises" and "Building" separately and points to no provision of the lease in which the separate definitions apply individually.

Other sections of the lease do seem to be logically inconsistent with the limited definition of "Premises" in the second paragraph, and imply that the building and any improvements are to be considered part of the premises. For example, Section 9 of the lease agreement, entitled CASUALTY, provides that, should the whole or any part of the "Premises" be damaged or destroyed during the lease term," . . . Lessor, at its sole cost and expense, shall restore or rebuild the . . . improvements on the premises to substantially the same condition in which the same were immediately prior to such damage or destruction. . ." to the extent of any insurance proceeds. (Exhibit 5 to Carrols' Response to Plaintiff's Motion for Summary Judgment). Other, similarly troubling provisions are described in Cain's Brief in Support of Its Motion for Summary Judgment, pp. 9-15.

8

Nonetheless, Cain does not offer an explanation of why "Premises" is separately defined in paragraph two of the lease as only a metes and bounds description of the real property, or why "Building" is separately defined and leased "together with" the "Premises."

The Court's primary goal is to interpret the contract in its entirety according to the parties intentions at the time the contract was created. Central Jersey Dodge Truck Center, Inc. v. SightSeer Corp., 608 F.2d 1106, 1109 (6th Cir. 1979). A contract's language should be interpreted according to the "plain and ordinary meaning" of the words. NBD Bancorp, Inc. v. FDIC, 643 F. Supp. 1119, 1121 (E.D. Mich. 1986). Under Michigan law, "a contract will not be construed so as to reject any words as surplusage if they can reasonably be given meaning." Wonderland Shopping Center Venture L.P. v. C.D.C. Mort. Inc., 274 F.3rd 1085, 1092 (6th Cir. 2001). A court should examine the contract as a whole, giving effect to all parts and language of a written agreement. Id. Extrinsic evidence can be used to interpret the meaning of a contract as long as it not inconsistent with the terms of the contract. Ford Motor Co. v. Northbrook Ins. Co., 838 F.2d 829, 833 (6th Cir. 1988). An ambiguity exists in a contract when a word or a phrase is "susceptible to two or more reasonable interpretations." Petovello v. Murray, 139 Mich. App. 639, 642; 362 N.W.2d 857 (1984). Looking within the four corners of the lease agreement it is apparent that an ambiguity exists regarding the definition of "premises." Both parties, however deny that the contract language is ambiguous.

It is not the proper role of a court to make a different contract for the parties when the language employed by them is clear and unambiguous. If the party's intent is clear from the language of a written agreement, the court must enforce the party's intent as expressed in the writing. There is no ambiguity when the definitions of purportedly disputed

terms are clear and lead to a coherent and unambiguous commercial transaction. Wonderland, 274 F.3d at 1096.

In this case, each party seeks summary judgment in its favor on the theory that the contract is unambiguous, and clearly entitles it to a favorable judgment. I find the arguments of both parties unpersuasive. The lease agreement under consideration plainly defines "Premises" and "Building" as separate and independent terms. Cain argues that the lease agreement could be readily interpreted as consistent with its position on the valuation issue, if the court simply ignores the separate definitions assigned to the terms "Premises" and "Building" in the initial provisions and interprets the term "Premises" to include land and building. Interpreting the contract in that manner, however, would require the court to reject (or ignore) the separate definitions as surplusage.

Carrols argues that the contract can be viewed as supportive of its summary judgment request by viewing the restrictive definition of the term "Premises" in paragraph two of the lease as pertaining only to the issue of valuation in the event of the exercise of the purchase option, rather than to the entirety of the agreement. That position counters Cain's argument that assigning the narrow (i.e., "land only") definition throughout the agreement renders many of its provisions illogical. The difficulty with Carrols' position is that the court must accept two separate and distinct definitions of the term "Premises" in a single contract, one including buildings and one not, with no guidance in the agreement as to which definition pertains to any particular clause. That, in my view, is the very essence of "ambiguity." Neither party has been able to state a convincing argument that a single definition of the term "premises" can be assigned throughout the agreement without disregarding the specific language employed and/or offending logic. It is plain that

10

the terms of the contract were carelessly assembled, and that the true intent of the parties is not clear from the language employed.

When a contract is ambiguous, the Court applies rules of contract construction to interpret the contract based upon the intention of the parties and purpose of the contract. Tel-Towne Props. Group v. Toys "R" Us-Delaware, Inc., 123 Fed. Appx. 656, 660 (6th Cir. 2005). Under Michigan law, extrinsic evidence is admissible to determine the parties intent and to prove and resolve ambiguities in a contract. Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortgage Capital, Inc., 274 F.3d 1085, 1095 (6th Cir. 2001). Extrinsic evidence of course of performance, conduct, or trade usage can all be used to interpret ambiguous provisions. Glenwood Shopping Center Ltd. Partnership v. K Mart Corp., 136 Mich. App. 90, 356 N.W.2d 281, 286-87 (Mich. Ct. App. 1984). Terry Barr Sales Agency, Inc. v. All-Lock Co., 96 F.3d 174, 180 (6th Cir. 1996).

In determining a Motion for Summary Judgment, however, the court may only determine the meaning of a contract when the terms are unambiguous. Cook v. Little Caesar Ent., Inc., 210 F.3d 653, 655 (6th Cir. 2000); SSC Associates Ltd Partnership v. General Retirement System of City of Detroit, 192 Mich. App. 360, 363; 480 N.W.2d 275 (1991). Once a contract is deemed ambiguous, "a factual development is necessary to determine the intent of the parties and summary disposition is inappropriate." Petovello, 139 Mich. App. at 639. An ambiguity "creates a question of fact for the jury, and the meaning of the disputed language cannot be construed as a matter of law." Hewett Grocery Co. v. Biddle Purchasing Co., 289 Mich. 225, 236 (Mich. 1939); See also, SSC Associates, 192 Mich. App. at 363; Cook, 210 F.3d at 656.


Because I find the term "Premises" ambiguous as employed within the lease agreement in dispute, I conclude that there is a genuine issue of material fact and I

recommend that both the Plaintiff's and Defendant's Motions for Summary judgment be denied.

### III.  NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Unites States v. Walters, 638 F.2d 947(6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6rh Cir. 1991).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Smith v. Detroit Federation of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to served upon this Magistrate Judge.

Within ten (10) days of service of any objection party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Donald A. Scheer<br>
DONALD A. SCHEER

DATED: October 24, 2005          UNITED STATES MAGISTRATE JUDGE

_____

## CERTIFICATE OF SERVICE

  I hereby certify on October 24, 2005 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on October 24, 2005. **None.**

             <u>s/Michael E. Lang</u>
             Deputy Clerk to
             Magistrate Judge Donald A. Scheer
             (313) 234-5217